NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

## IN RE NAREN CHAGANTI

---

2013-1372

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Serial No. 09/634,725.

---

Decided:  January 27, 2014

---

NAREN CHAGANTI, of Town & Country, Missouri, pro se.

NATHAN K. KELLEY, Deputy Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia. With him on the brief were JOSEPH MATAL and ROBERT J. MCMANUS, Associate Solicitors.

---

Before MOORE, SCHALL, and REYNA, *Circuit Judges.*

PER CURIAM.

Naren Chaganti appeals from the decision of the Patent Trial and Appeal Board (Board) affirming the obviousness rejections of all the claims of U.S. Patent Application No. 09/634,725 ('725 application).  Because

the factual findings underlying the Board's conclusion are supported by substantial evidence, and because the Board did not commit legal error, we *affirm*.

BACKGROUND

The invention claimed in Mr. Chaganti's '725 application is a method and system for providing limited access to articles, books, music, movies, and other copyrighted content through the Internet pursuant to a license. Separate Appendix ("SA") 53-54. The system examines copyright license information to ensure that persons requesting access to the content have such access only for a particular amount of time or during particular time periods. S.A. 54-55. The invention also allows for a limited number of requestors to simultaneously access information. *Id.* Finally, the invention uses a formatting program that enables content to be viewed on the requestor's device. S.A. 55-56. Claims 45 through 61 are at issue in this appeal. Claim 45 is representative:

> A server-computer implemented method of providing *online repository services* to a plurality of users . . . comprising . . . :
>
> establishing on the server computer connected to the Internet an account for each of a plurality of users;
>
> *storing on the server computer* a *copyright-protected* information object; and
>
> *controlling access* to the copyright-protected information object by one or more of the plurality of users in accord with one or more restrictions.

S.A. 317 (emphases added). Illustrative claims that depend from claim 45 add the further limitations of: "examining license information for the copyright-protected information object to determine a number N (where $N \geq 1$) of simultaneous users who could access the

copyright protected information object" (claim 48); allowing access to the copyrighted information "for a predetermined time" and during a particular "time period" (claim 49 and 50); and "formatting" the copyrighted information so that it is "suitable to the requirements of a user's device" (claim 51). S.A. 317-318. The examiner rejected the pending claims as unpatentable over U.S. Patent No. 7,243,079 (Manolis) in view of U.S. Patent No. 6,453,305 (Glassman). S.A. 73-75.

Manolis discloses a system that enables users to purchase prints of their digital photographs online and share photographs online. Manolis col. 2 ll. 63–65. Manolis discloses that a "user optionally can share his/her online photos (i.e., those images that the user has uploaded to the host computer system) with other users . . . ." *Id.* col. 9 ll. 37–39. Sharing photos online "causes the host system to set access permissions as appropriate to allow the intended share recipient to access the online images specified by the user." *Id.* col. 9 ll. 60–63. Manolis also discloses creating and displaying an image thumbnail for each of the uploaded photographs. *Id.* col. 6 ll. 14–57.

Glassman discloses an "electronic commerce system and method [that] enforces a license agreement for content on an open network by restricting the number of consumers that can concurrently access the content." Glassman, at [57]. It discloses tracking "the users of [a] web site and block[ing] users who are not licensed or who have exceeded the scope of the applicable license." *Id.* col. 5 ll. 52–54. Glassman also describes an embodiment in which a vendor of copyrighted content has a license that permits a fixed number of users to access content at any given time. This embodiment further allows the vendor to "check[] to determine whether there is an available license (i.e., whether an additional consumer is allowed to view the content under the license)." *Id.* col. 6 ll. 1–3. Glassman also discloses that the length of time and the time period during which customers are given access to

copyrighted content may be controlled. *Id.* col. 2 ll. 42–45, 63–65.

The examiner rejected pending claims 45 through 61 as obvious in view of Manolis and Glassman. S.A. 73-75. Additionally, he rejected claims 48, 49, 50, 54, 55, and 56 as obvious in view of other references in combination. S.A. 75-78. Finally, he rejected claim 46 under 35 U.S.C. § 112(a) as lacking adequate written description. S.A. 72. The Board upheld each of the examiner's rejections. S.A. 7-16.

Mr. Chaganti appeals the Board's obviousness rejections.[1] We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

I. Applicable Law

We review the Board's factual findings for substantial evidence and its legal conclusions *de novo. In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). Whether a claim would have been obvious under 35 U.S.C. § 103(a) is a legal conclusion based on underlying factual determinations. *Id.* The factual determinations include (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966). "[W]hether there is a reason to combine prior art references is a question of fact." *Rambus Inc. v. Rea*, 731 F.3d 1248, 1252 (Fed. Cir. 2013) (citations omitted).

---

[1] Because Mr. Chaganti did not also appeal the rejection of claim 46 as lacking adequate written description, the unpatentability of that claim has been finally decided and is not on appeal.

## II. Obviousness

### A. ANALOGOUS ART

The parties dispute whether Manolis is analogous art. "Two separate tests define the scope of analogous prior art: (1) whether the art is from the same endeavor, regardless of the problem addressed and, (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004). The Board found that Manolis is analogous to the claimed invention under the first test, concluding that "both the invention and Manolis' teachings are directed to systems which allow for the storage and retrieval of information objects by a plurality of users." S.A. 11. Mr. Chaganti argues that there is no substantial evidence that Manolis is analogous art. He contends that Manolis is not concerned with copyright-protected information and "the Board did not explain why it ignored this key differentiator" in finding that Manolis was relevant. Chaganti Br. 19.

We agree with the PTO that Manolis is analogous art. Because both Manolis and the claimed invention are directed to the controlled distribution of content via the Internet, they have essentially the same function and are in the same field of endeavor. The fact that Manolis does not specify that the photographs distributed by the system are copyrighted does not suggest that a skilled artisan would not consult Manolis. Manolis need not disclose every limitation of the claimed invention to fall within the same field of endeavor as the claimed invention.

### B. Teaching Away

In finding that the claims of the '725 application would have been obvious in view of the combination of Manolis with Glassman, the Board found that Glassman does not teach away from the claimed invention. S.A. 11.

Mr. Chaganti argues that the Board's finding lacks substantial evidence. He contends that Glassman's statement that "existing lock servers are undesirable on an open network" teaches away from using existing lock server architectures to provide controlled access to copyrighted material on an open network. *See* Glassman col. 2 ll. 16–17.

While Glassman describes the then-existing lock servers as "undesirable," we disagree that this constitutes a teaching away from mechanisms for controlling Internet access to copyrighted material. "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994). Glassman delineates the "undesirable" features of existing lock servers, but it also lists various features that a lock server should incorporate to avoid those deficiencies. *See* Glassman col. 2 ll. 18–31. Glassman affirmatively states that the "method and system for electronic commerce" disclosed meets those needs. *Id.* col. 2 ll. 33–37. Glassman further teaches the use of a locking mechanism to police content use over the Internet and states that it is an object of the invention to "allow enforcement of an N-user license for content located on an open network like the Internet." *Id.* col. 2 ll. 29–30. Therefore, we find that substantial evidence supports the Board's conclusion that Glassman does not teach away from the claimed invention's disclosure of limiting Internet access to copyrighted material.

## C. Reason to Combine

The Board found that a person of skill in the art would have had reason to combine Manolis with Glassman to arrive at the claimed invention. S.A. 11 (citing S.A. 115-116). Mr. Chaganti argues that the Board erred

by failing to articulate that reason. He contends that the Board's reason to combine the references was motivated by hindsight bias. He further argues that the Board erred by failing to make factual findings with respect to the level of ordinary skill in the field of the invention.

We disagree. The Board found that a person of ordinary skill would have had a reason to use "the online print service of Manolis to provide licensed access to copyrighted images in order to provide account users with the ability [to] control access to their copyrighted images" while "at the same time providing concurrent access to the images as suggested by Glassman." S.A. 11 (citing S.A. 115-116). We read this as a statement that common sense would have provided a reason to combine these references. We find this persuasive given that, while Manolis does not specify that the images distributed by the system are copyrighted, they almost certainly are. See 17 U.S.C. § 102 ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ."). Common sense would have provided a person of ordinary skill with reason to use the teachings of Glassman to distribute these copyrighted images under the appropriate licenses. Substantial evidence supports the Board's finding.

Nonetheless, Mr. Chaganti's argument regarding the lack of a stated reason to combine is not unreasonable. We caution the Board and the PTO that such reasons must be clearly articulated. It is not enough to say that there would have been a reason to combine two references because to do so would "have been obvious to one of ordinary skill." S.A. 115. Such circular reasoning is not sufficient—more is needed to sustain an obviousness rejection.

We agree with the PTO that the absence of factual findings with respect to the level of ordinary skill in the field of the invention does not "give rise to reversible

error" where, as here, "the prior art itself reflects an appropriate level and a need for testimony is not shown." *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) (citations omitted). Moreover, Mr. Chaganti has not made any showing that a finding regarding the level of ordinary skill would impact the ultimate conclusion of obviousness under section 103. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 963 (Fed. Cir. 1986).

## D. Dependent Claims

The Board found that Glassman teaches examining a license to determine a number N of authorized concurrent users (claim 48), as well as restricting the amount of time or time periods during which the requestor is given access to the information (claims 49 and 50). S.A. 12. With respect to claims 51 and 57–60, the Board affirmed the examiner's finding that Manolis' description of creating thumbnail images of photographs teaches "formatting" information and using a formatter as required by those claims. S.A. 12-13.

Mr. Chaganti disputes the Board's findings. First, he argues that Glassman does not examine license information to determine N, as required by claim 48, but instead starts with a known N. Next, he contends that Glassman does not disclose the step of receiving licensing information indicating that the license is for access of information for a predetermined time ($T_{license}$) as required by claim 49. Similarly, he contends that Glassman does not disclose the step of determining a time period (T) during which the copyright-protected information object may be accessed as required by dependent claim 50.

With respect to dependent claims 51, and 57–60, Mr. Chaganti seems to argue that the Board misconstrued the terms "formatting," "formatter," and "format." However, Mr. Chaganti does not offer any construction of these terms. Instead, he argues only that the creation of

thumbnail images from a photograph as disclosed in Manolis does not constitute formatting an image in a manner suitable to a user's device. He contends that the thumbnails Manolis discloses are created at the time of uploading an image and before a user is allowed access to online photographs and thus are not formatted to be "suitable to the requirements of a user's device."

We agree with the PTO that substantial evidence supports the Board's findings that the combination of Manolis and Glassman discloses each limitation of dependent claims 48–50, 51, and 57–60, and renders these claims obvious. First, with respect to dependent claim 48, there is substantial evidence that Glassman teaches using license information to determine the number of users, N, that are allowed to access content, and does not arbitrarily predetermine this number. For instance, Glassman describes an embodiment in which "[p]referably, the vendor . . . maintains a data structure associated with the licensed content that can be quickly scanned to determine whether a license is available." Glassman col. 6 ll. 3–6. In this embodiment, the vendor "checks to determine whether there is an available license"—suggesting that the number of users is determined on the basis of what the license allows. *Id.* col. 6 ll. 1–3. Next, with respect to dependent claims 49 and 50, there is substantial evidence that Glassman discloses limiting access to copyrighted information "for a predetermined time" and during a fixed "time period." Glassman discloses that "permission to access specific content . . . may be unlimited or it may be for only a relatively brief period of time, say a few minutes to a few hours." *Id.* col. 2 ll. 42–45. It further teaches that "optionally, [the invention] provides the consumer with an estimate of when a license will be available." *Id.* col. 2 ll. 63–65.

Finally, we also agree with the PTO that substantial evidence supports the Board's finding that Manolis discloses formatting content and using a formatting program

as required by dependent claims 51 and 57–60. Manolis describes formatting uploaded photographs to display them as thumbnail images on a user's device. Manolis col. 6 ll. 14–57.

We have considered Mr. Chaganti's remaining arguments and find them unpersuasive. Because each of the pending claims would have been obvious in light of the combination of Manolis and Glassman, we do not reach the Board's additional bases for rejecting the claims.

CONCLUSION

For the foregoing reasons, we *affirm*.

**AFFIRMED**