**Shinpei OKAJIMA, Appellant,**

v.

**Joel BOURDEAU, Appellee.**

No. 01–1090.

United States Court of Appeals, Federal Circuit.

Aug. 16, 2001.

Rehearing and Rehearing En Banc Denied Sept. 17, 2001.

---

James A. Deland, Deland Law Office, of San Ramon, CA, argued for appellant.

Michael J. Fink, Greenblum & Bernstein, of Reston, VA, argued for appellee.

Before MAYER, Chief Judge, MICHEL, and LINN, Circuit Judges.

MICHEL, Circuit Judge.

This is a patent interference case concerning the issue of obviousness. Shinpei Okajima appeals the August 30, 2000 Final Decision and Judgment of the Board of Patent Appeals and Interferences ("Board") of the United States Patent and Trademark Office ("PTO") which held that claims 13–24 and 26–28 of Joel Bourdeau's application are not unpatentable for obviousness. Because substantial evidence supports the Board's findings underlying its conclusion of nonobviousness, and the Board's decision was untainted by legal error, we affirm.

## Background

On April 30, 1998, the PTO declared this interference between Okajima's U.S. patent application No. 08/665,679, filed June 18, 1996, and Bourdeau's U.S. patent application No. 08/676,928, filed July 8, 1996. By virtue of his earlier filing date, Okajima was initially designated the senior party. However, the Board accorded Bourdeau priority upon determining that he was entitled to a priority date of July 11, 1995, the filing date of Bourdeau's French application 95.08587. On appeal, Okajima does not contest priority.

Okajima filed a preliminary motion for judgment against Bourdeau's claims 13–24 and 26–28 on the ground that these claims are unpatentable over the prior art. The administrative patent judge ruled that these claims are not unpatentable under 35 U.S.C. § 103 in light of various combinations of prior art references, including European Patent Office Publication No. 356,-400 (EP '400), published February 28, 1990; German Offenlegungsschift DE 4,333,503 (DE '503), published April 6, 1995; and U.S. Patent 5,401,041 (U.S. '041), issued March 28, 1995. After a final hearing, the Board upheld the patentability of the subject matter of the count and Bourdeau's claims. This ruling is the subject of Okajima's appeal.

Bourdeau's claims are directed to a snowboard boot. The application, as de-

picted in the diagram below, discloses that a snowboarder typically bends his or her legs frontwardly and laterally, with the downhill foot inclined more sharply: [1]

Bourdeau's claimed boot has a rigid shell surrounding the foot and a rigid back portion that cradles the back of the leg. The two pieces are joined by, among other things, a broad, rounded pin called a "journal," which permits the pieces thereby joined to pivot about an axis. The placement of the journal is key to Bourdeau's invention. Prior art boots (including DE '503 and U.S. '041) had the journal in the back of the boot, on the boot's longitudinal median plane, such that the journal was positioned upon the snowboarder's Achilles tendon. This design allowed for substantial lateral movement, but restricted the skier's ability to bend his or her leg forward. The placement of the journal on the Achilles tendon also produced discomfort. Other prior art boots (including EP '400) had two journals, set atop the user's ankle bones, which primarily affords longitudinal flexibility. Bourdeau's allegedly nonobvious contribution to the snowboard boot art includes making a boot with a single journal that is offset from the medial plane of the boot, such that it rests in the recessed area between the Achilles tendon and the internal malleolus (*i.e.*, the bony protuberance of the ankle) of the snowboarder.

In Bourdeau's claimed boot, the axis of the journal is disposed at an angle between 20˜ and 45˜ with respect to the longitudinal median plane of the boot (*i.e.*, the plane running from toe to heel, and up and down through the boot). Bourdeau's claim 13, representative for present purposes, recites a "journal attachment journalling said back portion to said rear portion of said shell, said journal attachment being positioned on a medial side of the boot, along a journal axis forming an angle of between 20˜ and 45˜ with respect to the longitudinal median plane of the boot."

Bourdeau discloses that such a design improves not only the comfort of the boot, but also its mobility. As stated in his application, when the journal is placed too close to the Achilles tendon (*i.e.*, at an angle less than 20˜ with respect to the longitudinal median plane of the boot), the user is afforded greater lateral mobility to the prejudice of the user's ability to bend forward. Contrarily, when the journal is placed too far towards the ankle (*i.e.*, at an angle greater than 45˜ with respect to the longitudinal median plane of the boot) the user gains greater ability to bend forward, but loses lateral flexibility. Bourdeau dis-

1. This drawing from Bourdeau's French application is substantively similar to the analogous drawing appearing in his U.S. application, but is more illustrative and reproducible.

closes that placing the journal at an angle between 20˜ and 45˜ with respect to the longitudinal median plane of the boot provides optimal forward and lateral bending capacity.

Following is a diagram of the snowboard boot disclosed in EP '400, showing the use of two opposing journals 12 and 14, which the patent describes are located "in front of the outer ankle bone." EP '400, col. 4, ll. 3–4 (citation to original, translated from German).

Among its findings, the Board found that one of ordinary skill in the art would not have been motivated to combine the teachings of EP '400 (disclosing two opposing laterally-disposed journals atop the ankle) with DE '503 and U.S. '041 (disclosing a single journal atop the Achilles tendon). Accordingly, the Board determined that Bourdeau's claimed boot was not unpatentable for obviousness in light of the prior art under 35 U.S.C. § 103. Okajima filed a timely notice of appeal to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4) and 35 U.S.C. § 141. We heard oral argument in this appeal on June 7, 2001.

## Discussion

■ Whether a claimed invention is unpatentable as obvious under 35 U.S.C. § 103 is a question of law based on underlying findings of fact. *In re Gartside*, 203 F.3d 1305, 1316, 53 USPQ2d 1769, 1776

(Fed.Cir.2000). The underlying factual inquiries include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; and (3) the differences between the claimed invention and the prior art. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459, 460 (1966). On appeal, the Board's ultimate determination of nonobviousness is reviewed *de novo*, but the Board's underlying factual findings are reviewed for substantial evidence. *Gartside*, 203 F.3d at 1316, 53 USPQ2d at 1776. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

■ Okajima contends that the Board erred as a matter of law by failing to make any findings of fact regarding the level of skill in the art. As described in *Al–Site Corp. v. VSI International, Inc.*, 174 F.3d 1308, 1324, 50 USPQ2d 1161, 1171 (Fed.

Cir.1999), the level of skill in the art is a prism or lens through which a judge, jury, or the Board views the prior art and the claimed invention. This reference point prevents these factfinders from using their own insight or, worse yet, hindsight, to gauge obviousness. *Id.* Skill in the art does not act as a bridge over gaps in substantive presentation of an obviousness case, but instead supplies an important guarantee of objectivity in the process. *Id.* (citing *Ryko Mfg. Co. v. Nu–Star, Inc.,* 950 F.2d 714, 718, 21 USPQ2d 1053, 1057 (Fed.Cir.1991)). While it is always preferable for the factfinder below to specify the level of skill it has found to apply to the invention at issue, the absence of specific findings on the level of skill in the art does not give rise to reversible error "where the prior art itself reflects an appropriate level and a need for testimony is not shown." *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163, 225 USPQ 34, 38 (Fed.Cir.1985); *see also Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.,* 807 F.2d 955, 963, 1 USPQ2d 1196, 1201 (Fed.Cir.1986) (excusing failure to make express findings as to the level of ordinary skill where there is no showing that the court's failure to make such a finding influenced the ultimate determination).

■ In this case, Okajima stated during the final hearing that there was no dispute that the level of skill was high. Where the parties agree that the level of skill in the art is high, any finding by the Board that the proper level of skill is less than that urged by the parties would only reinforce the Board's conclusion of nonobviousness. *See Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d 1565, 1574, 230 USPQ 81, 88 (Fed.Cir.1986) (recognizing that particular findings as to level of skill do not influence

the ultimate determination under § 103 where there is a "determination that an invention would have been *nonobvious* to those of *extraordinary* skill"). Accordingly, we find no harm under the circumstances of this case in the Board's failure to set forth express findings as to the level of skill.

■ Okajima also contests the Board's factual finding that a person of ordinary skill in the art would not have been motivated to combine the teachings of DE '503 and U.S. '041 with EP '400. Okajima insists that a highly skilled snowboard boot designer would have learned from EP '400 (and its disclosure of two laterally-disposed journals) that a single journal, as disclosed in DE '503 and U.S. '041, could be offset to a position between the Achilles tendon and the internal malleolus, as claimed by Bourdeau. Moreover, Okajima argues that such an artisan would have been motivated to do so to accommodate the need for the snowboarder's leg to incline both laterally and forwardly. Okajima notes that the Board expressly found to the contrary. Indeed, the Board concluded that the use of two journals on opposite sides of the boot disclosed in EP '400 would provide adequate "swiveling action longitudinally," but "would appear to hinder or obstruct most lateral movement by the wearer." The Board found no motivation to combine EP '400 with DE '503 and U.S. '041, as it found that the latter references teach the desirability of lateral movement by the wearer, as opposed to forward movement, as disclosed in EP '400.

■ Okajima's argument is essentially a challenge to the Board's factual determinations. However, we may overturn the Board's factual findings only if they are unsupported by substantial evi-

dence. *Gartside*, 203 F.3d at 1316, 53 USPQ2d at 1776. Here, the Board has done a thorough job of setting forth the basis for its factual findings in its opinion, which contains a review of the scope and content of the prior art references, a description of the differences between Bourdeau's claimed invention and each of the prior art references, and an analysis of the asserted combinability of the references. The Board specifically found that EP '400 teaches providing a swiveling action longitudinally and slightly forward, but that the use of two opposing journals would obstruct most lateral movement by the wearer. Moreover, the record reflects that the Board explicitly questioned Okajima on this subject during the final hearing. Judge Lee asserted that "in this EP–400 ski boot, when you have the opposite sides all pinned down or journaled-in, then there is no lateral rotation allowed." After an extended colloquy, counsel failed to convince the Board otherwise. By explaining its tentative position during the final hearing, giving counsel an opportunity to challenge the Board's imminent holding, and setting forth its findings in detail in its opinion, the Board has provided our court with a well-supported decision. When it sets forth distinct findings of fact, and particularly when it does so in the manner that a district court must under Fed. R.Civ.P. 52(a), the Board's findings are entitled to broad deference. *Gartside*, 203 F.3d at 1316, 53 USPQ2d at 1776. Indeed, such express findings of fact are the key to meaningful appellate review, and obviate the need for us to remand for further proceedings at great cost and inefficiency to the parties. *Gechter v. Davidson*, 116 F.3d 1454, 1457–58, 43 USPQ2d 1030, 1032–34 (Fed.Cir.1997). Here, the Board's factual findings are readily sustainable under our deferential standard of review.

And we find no legal error in the absence of specific findings as to the level of ordinary skill, nor in the Board's conclusion as to the ultimate determination of nonobviousness.

### Conclusion

We conclude that the Board's finding that there was no motivation to combine the cited prior art references as suggested by Okajima is supported by substantial evidence. And, we conclude that it did not constitute reversible error for the Board's opinion to omit specific findings on the level of ordinary skill. Accordingly, the Board's decision that claims 13–24 and 26–28 of Bourdeau's application are not unpatentable for obviousness is *AFFIRMED*.